UNITED STATES BANKRUPTCY COURT FOR
THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| **ORECK CORPORATION, *ET AL.*,** | Case No. 13-04006 |
| Debtors.[1] | Judge Lundin<br>(Jointly Administered) |

### THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS' RESPONSE TO THE DEBTORS' SECOND MOTION FOR INTERIM AND FINAL ORDERS (I) AUTHORIZING (A) THE DEBTORS TO OBTAIN POSTPETITION FINANCING ON A SENIOR SECURED SUPERPRIORITY BASIS PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 363, AND 364; (B) TO UTILIZE CASH COLLATERAL PURSUANT TO 11 U.S.C. §§ 361, 363 AND 364; (III) SCHEDULING A FINAL HEARING PURSUANT TO BANKRUPTCY RULES 4001(b) And (c); AND (IV) GRANTING RELATED RELIEF

The official committee of unsecured creditors (the "Committee") appointed in the bankruptcy cases of the above-captioned debtors and debtors-in-possession (collectively, the "Debtors"), by and through its undersigned proposed counsel, hereby submits this response (the "Response") to the *Debtors' Second Motion for Interim and Final Orders (I) Authorizing (A) The Debtors To Obtain Postpetition Financing On A Senior Secured Superpriority Basis Pursuant To 11 U.S.C. §§ 105, 361, 362, 363, and 364; (B) To Utilized Cash Collateral Pursuant To 11 U.S.C. § 363; (II) Granting Adequate Protection To Prepetition Secured Lenders Pursuant To 11 U.S.C. § 361, 363, and 364; (III) Scheduling Final Hearing Pursuant To Bankruptcy Rules*

---

[1] The Debtors are as follows: Oreck Corporation, ASP Oreck, Inc., Oreck Direct, LLC, Oreck Merchandising, LLC, Oreck HomeCare, LLC, Vecteur, LLC, Oreck Holdings, LLC, Oreck Manufacturing Company, and Oreck Sales, LLC.

*4001(b) and (c) and (IV) Granting Related Relief* (the "Second DIP Motion")[2] [Docket No. 120]. In support of this Response, the Committee respectfully states as follows:

## PRELIMINARY STATEMENT

1. The Committee recognizes that the Debtors' Second DIP Motion reduces certain excesses contained in the First DIP Motion. However, it continues to seek certain treatment for the benefit of the Prepetition Lenders at the expense of the Debtors' estates and their general unsecured creditors which simply is inappropriate, unreasonable or unnecessary.

2. Specifically, the Interim DIP Order proposes to authorize the use of a significant portion of the proceeds to satisfy the Debtors' prepetition obligations to the first lien DIP Lender. It then grants the "rolled-up" prepetition first lien obligations super priority status. The prepetition first lien indebtedness - which appears to be adequately secured - becomes further secured by, for example, Avoidance Actions. However, the first lien indebtedness is not increasing. Instead, the acquirer of the first lien indebtedness is becoming further secured for that indebtedness simply as a product of that debt being replaced.

3. Also, although the proposed Interim DIP Order carves Avoidance Actions out of the definition of Assets, the section 364(c)(2) and (c)(3) liens in the proposed form of final order does not attach to "Assets" but to "property" which arguably would include Avoidance Actions.

4. Accordingly, absent the modification of certain provisions described herein, the Second DIP Motion, like the first, should be denied.

---

[2] Unless otherwise defined herein, all capitalized terms shall have the meanings ascribed to such terms in the Second DIP Motion.

# GENERAL BACKGROUND

5. On May 6, 2013 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").

6. Since the Petition Date, the Debtors have operated their businesses and managed their properties as debtors-in-possession pursuant to 11 U.S.C. §§ 1107(a) and 1108. No Examiner has been appointed in the Debtors' bankruptcy cases.

7. On the Petition Date, the Debtors filed their *Motion for Interim and Final Orders (I) Authorizing (A) The Debtors To Obtain Postpetition Financing On A Senior Secured Superpriority Basis Pursuant To 11 U.S.C. §§ 105, 361, 362, 363, and 364; (B) To Utilized Cash Collateral Pursuant To 11 U.S.C. § 363; (II) Granting Adequate Protection To Prepetition Secured Lenders Pursuant To 11 U.S.C. § 361, 363, and 364; (III) Scheduling Final Hearing Pursuant To Bankruptcy Rules 4001(b) and (c) and (IV) Granting Related Relief* [Docket No. 10] (the "First DIP Motion").

8. By *Order Denying Debtors' Motion For Interim and Final Orders Authorizing Postpetition Financing, Use Of Cash Collateral And Granting Adequate Protection* [Docket No. 56], the Court denied the First DIP Motion for the reasons set forth during a hearing held on May 8, 2013.

9. On May 16, 2013, the Office of the United States Trustee appointed the Committee pursuant to 11 U.S.C. § 1102. [Docket No. 103].

10. On May 17, 2013, the Committee selected Lowenstein Sandler LLP to serve as its counsel.

11. The Debtors filed the Second DIP Motion, together with a motion for an expedited hearing on the motion [Docket No. 118], on May 17, 2013, and on that same date, the Court entered the *Order Setting Expedited Hearing on Motion to Approve DIP Financing with*

*Black Diamond Commercial Finance, L.L.C.* [Docket No. 124], scheduling a hearing on the Second DIP Motion for May 21, 2013.

## JURISDICTION AND VENUE

12. The Court has jurisdiction over this Response pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## THE DEBTORS' PREPETITION CAPITAL STRUCTURE

13. According to the Second DIP Motion, GSC Recovery III, L.P. (as successor in interest to Wells Fargo Bank, National Association, the "Prior Prepetition First Lien Lender"), as lender (the "Prepetition First Lien Lender") asserts a lien secured by all of the Debtors' assets securing a certain revolving line of credit dated August 29, 2012 in the maximum amount of $20 million.

14. Gleacher Products Corp., as administrative agent, and certain institutions from time to time party thereto as lenders ("Prepetition Second Lien Lenders") assert a junior lien securing a certain revolving line of credit in original amount of $5,467,897. According to the Debtors, the Prepetition Second Lien Lenders rights are subject to the terms of a certain Intercreditor Agreement dated March 19, 2010, in which the Prepetition Second Lien Lenders waived, in writing, all rights they had as junior lien creditors, including the right to object to the use of cash collateral under 11 U.S.C. § 363, DIP financing under 11 U.S.C. § 364, and any "carve out" consented to by the Prepetition First Lien Lender.

15. In addition to their secured debt, the Debtors assert unsecured debt of approximately $15 million owed to various trade creditors and other general unsecured creditors.

## THE PROPOSED DIP FINANCING

16. The Debtors propose to finance themselves pending a potential sale of the their assets as a going concern by, among other things, entering into a postpetition financing

facility (the "DIP Facility") to be provided by GSC Recovery III, L.P. and any other lenders that become signatories to the DIP Credit Agreement (the "DIP Lenders") led by Black Diamond Commercial Finance, L.L.C., as Agent (the "Agent").

17. Another Black Diamond entity, Black Diamond Capital Management, LLC, owns or controls investment funds (including GSC Recovery III, L.P.) (such entities, collectively, the "Sponsor") that own or control a majority of the voting stock of Oreck Holdco 1, Inc., the ultimate parent company of the Debtor.

18. Pursuant to the Second DIP Motion, the Debtors and the DIP Lenders, acting through the Agent, have agreed to provide the Debtors with a postpetition DIP Facility in the maximum amount of $9,500,000, of which up to an aggregate principal or face amount of $6,500,000 will be available on an interim basis until entry of a final order (the "DIP Credit Agreement," and together with the documents related thereto, the "DIP Loan Documents").

## THE COMMITTEE'S CONCERNS REQUIRE FURTHER MODIFICATION OR DENIAL OF THE SECOND DIP MOTION

19. Although the Committee recognizes that the revised DIP financing is less onerous than previously requested, there are still issues which need to be addressed before it should be approved.

### *There Should Be No Lien On Avoidance Actions*

20. While the proposed Interim DIP Order defines "Assets" to exclude Avoidance Actions in footnote 3, the liens provided under 11 U.S.C. §§ 364(c)(2) and 364(c)(3) attach to all "property" of the Debtors and are not limited to Assets.

### *The Rolled Up Prepetition Lender Debt Should Be Excluded From The Superpriority Administrative Expense Claim*

21. Similarly, the Roll-up Payments should be carved out of and excluded from the superpriority administrative expense claims. It is one thing to "prime" administrative creditors and unsecured creditors to protect the DIP Lenders for new money provided, but it is

-5-
Case 3:13-bk-04006    Doc 147    Filed 05/20/13    Entered 05/20/13 16:55:26    Desc Main
Document    Page 5 of 12

unfair to accord prepetition debt postpetition superprioirty status simply by virtue of the acquisition of the prepetition debt.

*The Rolled Up Prepetition Lender Debt Should Be Excluded
From Liens On Otherwise Unencumbered Assets*

22. The Roll-up Payments also should be carved out of and excluded from any postpetition lien afforded the DIP Lenders for new money on previously unencumbered assets. Although the Committee has not yet had an opportunity to review the nature, extent and validity of the prepetition liens, the Committee has cause to believe that the prepetition lenders may not have taken a lien on more than 35% of the stock of any of the Debtors' foreign affiliates, and may not have a direct lien on any of those entities' assets. Again, it is one thing to "prime" administrative creditors and unsecured creditors to protect the DIP Lenders for new money provided, but it is unfair to simply convert prepetition unsecured deficiency claims (if any) to postpetition lien claims on previously unencumbered assets by virtue of its acquisition.

*The Amount Of The Roll-Up Is Excessive
Compared To The Amount Of New Money*

23. The Committee objects to the roll-up of the Prepetition First Lien Credit Agreement Obligation, in the aggregate principal amount of $4,230,719.33 (Interim DIP Order at ¶ 13). *See In re Willingham Investments, Inc.,* 203 B.R. 75, 79 (M.D. Tenn. 1996) ("Similarly, under the facts of this case, First Tennessee should not be permitted to elevate its undersecured prepetition claim above similarly situated prepetition creditors or above postpetition creditors holding administrative expense claims"); *Sun Runner Marine, Inc.*, 945 F.2d 1089, 1093 (9th Cir. 1991) ("Section 364 does not, however, authorize the debtor to pay the lender's pre-petition unsecured claim as a condition precedent to the post-petition financing."); *Official Comm. of Unsecured Creditors of New World Pasta Co. v. New World Pasta Co.*, 322 B.R. 560, 569 n.4 (Bankr. M.D. Pa. 2005) (noting that roll-up provisions "have the effect of improving the priority

of a prepetition creditor"); *In re Tenney Village Co., Inc.*, 104 B.R. 562, 570 (Bankr. D.N.H. 1989) (holding that "Section 364(d) speaks only of the granting of liens as security for new credit authorized by the Court").

24. The proposed "Roll-Up Payments" are particularly inappropriate given the relatively small amount of "new money" that the Debtors will obtain under the insider provided DIP Credit Agreement. Therefore, the Committee objects to the "Roll-Up Payments" that the DIP Lenders are seeking.

*The Budget Is Either Excessive Or Unclear*

25. Under the proposed Budget, there is an advisory fee slated to be paid weekly, not monthly, in the aggregate amount of more than $2 million. It is unclear, however, who is to receive it and whether it is subject to further disclosure or review.

26. The proposed Budget also contains a category titled "all other" in the amount of $1.4 million without further explanation. At a minimum, there should be additional disclosure in this regard.

27. The proposed Budget does not appear to include a line item for Bankruptcy Code section 503(b)(9) administrative expense claims. Is it the Debtors' intention to pay such administrative claims from the proceeds of sale? Will there be funds in the estates with which to do so? These obligations do not appear to be budgeted. Moreover, it cannot be determined from the Debtors' proposed asset sale, whether the Debtors will be administratively solvent so as to pay such claims.

28. Also, on information and belief, the Debtors intend to pay certain critical vendors to preserve asset values and important vendor relationships, but it is unclear whether and to what extent this line item is in the proposed Budget.

*Objections With Respect to the DIP Loan Agreement*

Case 3:13-bk-04006    Doc 147    Filed 05/20/13    Entered 05/20/13 16:55:26    Desc Main
Document      Page 7 of 12

29. While approval of the proposed DIP Credit Agreement remains within the Court's "informed discretion," the Court must balance the interests of the DIP Lenders with those of general unsecured creditors. Striking this balance requires that a debtor seeking postpetition financing on a superpriority basis demonstrate that the proposed financing comports with basic notions of fairness and equity and inure to the benefit of the Debtors' estates. *See In re Aqua Associates*, 123 B.R. 192, 196 (Bankr. E.D. Pa. 1991); *In re Ames Department Stores, Inc.*, 115 B.R. 34, 37-40 (Bankr. S.D.N.Y. 1990). The Debtors cannot abrogate their fiduciary duties to their estates and creditors. *Ames Department Stores*, 115 B.R. at 38.

30. Section 364 of the Bankruptcy Code is not a "secured lenders act" allowing a creditor to undo the more level "playing field" contemplated by the Bankruptcy Code. The Court in *Ames Department Stores* stated:

> Acknowledging that Congress, in Chapter 11, delicately balanced the hope of debtors to reorganize and the expectations of creditors for payment, the courts have focused their attention on proposed terms that would tilt the conduct of the bankruptcy case; prejudice, at an early stage, the powers and rights that the Bankruptcy Code confers for the benefit of all creditors; or leverage the Chapter 11 process by preventing motions by parties-in-interest from being decided on their merits.

*Ames Department Stores* 115 B.R. at 37 *citing In re Tenney Village Co., Inc.*, 104 B.R. 562, 568 (Bankr. D. N.H. 1989).

31. Consistent with the principles announced by the courts above, the Committee submits that the proposed DIP Credit Agreement, the Interim DIP Order and the proposed Final DIP Order are unduly prejudicial to the rights of unsecured creditors and, therefore, the Second DIP Motion must be denied unless the DIP Lenders agree to address the limited issues raised by the Committee herein.

32. The Committee has the following objections relative to the terms of the proposed DIP Loan Agreement:

- Under Section 3.3, the collateral proposed to be provided to the lenders includes not only the insurance proceeds from any damage or loss of the collateral, but also includes business interruption insurance proceeds. The new collateral should include only insurance proceeds from the loss or damage to the collateral.

- Section 5.14 provides that a lease default is a default under the DIP loan. Most likely there are pending defaults under one or more of the debtors' dozens of leases – whether due to the nonpayment of "stub" rent or common area maintenance charges or otherwise.

- Section 5.29 references a list of inventory locations. Liens on inventory overseas may not be valid. A list of inventory locations should be provided at this time.

- Section 5.19 references a schedule of Outstanding Indebtedness. It should be provided at this time – especially because neither the schedules of assets and liabilities nor the statement of financial affairs have been filed yet.

- On page 31 it is required that money belonging to the Debtors be kept in Controlled Accounts (presumably under the lenders' control). It should be clarified that there cannot be offsets absent further Court order.

- Section 6.16 states that a chief restructuring officer ("CRO") must be retained and that the selection must be approved by the lenders. Court approval rather than lender approval should be adequate as opposed to enabling the lenders to use approval of the CRO as a vehicle for greater control over the Debtors.

- The CRO may share information with the lenders without authorization or approval by Debtors' board or management. The Debtors' boards of directors and management have an obligation to oversee the CRO and to assure that information provided to lenders is true and accurate. Those obligations should not be abdicated.

- Section 6.20 requires that a chief financial officer be appointed by May 31, 2013. The Committee reserves all of its rights with respect to the application therefor.

- Section 7.12 recites that equity sponsor fees are limited to $100,000. Such fees should not be payable except upon further order of the Court.

- Section 7.18 provides that the Debtors cannot file a cash collateral motion. This prohibition appears effective regardless of the Debtors' ability to demonstrate adequate protection. The Debtors, however, should have flexibility in the event that the lenders unjustifiably limit or terminate funding, and the Debtors may not have time to litigate the merits or good faith of the lenders' actions in this regard.

- Pursuant to section 9.6, a default in another loan agreement to which the Debtors are a party is a default under the DIP loan. That should not be the case if the other lender(s) cannot exercise remedies.

- Section 9.13(n) states that the lenders have a veto over any sale motion and over a plan of reorganization. The Lenders are not management. This appears to be yet another example of lenders intervening in management. So long as the lenders are paid in full pursuant to a plan of reorganization or pursuant to a sale of assets, the lenders should not have the ability to exercise such control.

- Section 9.13(e) effectively bars the Committee from challenging the lenders' liens.

- Section 9.13(c) states that it is a default under the DIP loan if the Committee seeks to terminate exclusivity even if the Committee has a proposal for a plan of reorganization that is superior to that of the Debtor or the lenders. The Committee's ability to promulgate a plan should not be so impaired.

- Section 10.6 states that the lenders shall not be required to marshal assets. But, marshaling can be very valuable to the Committee depending upon the location of the Debtors' assets and the ability to monetize them. The Court should

determine the issue at a later date when the outcome of these cases is better known.

## RESERVATION OF RIGHTS

33. The Committee reserves the right to revise, amend or supplement this Response at any time or at any further hearing on the Second DIP Motion, Interim DIP Order, and Final DIP Order.

34. The Committee respectfully requests that the Court (i) deny the Second DIP Motion unless the concerns of the Committee set forth herein are resolved as discussed above; and (ii) grant the Committee such other and further relief as the Court deems just and proper.

Respectfully submitted,

*/s/ Daniel H. Puryear*
Daniel H. Puryear; No. 18190
Maximilian R. Loosen; No. 27388
Puryear Law Group
102 Woodmont Boulevard
Woodmont Centre, Suite 520
Nashville, TN 37205
(615) 630-6601 – Telephone
(615) 630-6602 – Facsimile
dpuryear@puryearlawgroup.com
mloosen@puryearlawgroup.com

and

-11-
Case 3:13-bk-04006    Doc 147    Filed 05/20/13    Entered 05/20/13 16:55:26    Desc Main
Document      Page 11 of 12

**LOWENSTEIN SANDLER LLP**

*/s/ Sharon L. Levine*
Sharon L. Levine, Esq.
Kenneth A. Rosen, Esq.
65 Livingston Avenue
Roseland, New Jersey 07068
(973) 597-2500 (Telephone)
(973) 597-2400 (Facsimile)
slevine@lowestein.com
krosen@lowenstein.com

*Proposed Counsel for the Official Committee of Unsecured Creditors*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to those parties specifically requesting electronic service. The following parties will be served via first class, U.S. Mail, postage prepaid:

| | |
|---|---|
| William L. Norton, III<br>Bradley Arant Boult Cummings, LLP<br>1600 Division Street, Suite 700<br>Nashville, TN 37203 | United States Trustee<br>318 Customs House<br>701 Broadway<br>Nashville, TN 37203 |
| Beth R. Derrick<br>Assistant US Trustee<br>Office of United States Trustee<br>318 Customs House<br>701 Broadway<br>Nashville, TN 37203 | |

on this the 20th day of May, 2013.

The parties may access this filing through the Court's electronic filing system.

*/s/ Daniel H. Puryear*
Daniel H. Puryear