Dated: 3/10/2014

Keith M. Lundin
U.S. Bankruptcy Judge



# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE

| | |
|---|---|
| In re: | Case No. 3:13-bk-04006 |
| | (Administratively Consolidated) |
| **ORECK CORPORATION, et. al,** | |
| *Debtors.* | Chapter 11 |
| | Hon. Keith M. Lundin |

## MEMORANDUM OPINION

The issue is whether lessors of debtor's corporate headquarters are entitled to administrative expense priority under either 11 U.S.C. § 365(d)(3) or § 503(b)(1) for 25 days of unpaid "stub rent"[1] for the period between the Chapter 11 petition and the first postpetition rent payment. Applying *Koenig Sporting Goods, Inc. v. Morse Road Company (In re Koenig Sporting Goods, Inc.)*, 203 F.3d 986 (6th Cir. 2000), and *BK Novi Project L.L.C. v. Stevenson (In re Baby N' Kids Bedrooms, Inc.)*, No. 07-1606, 2008 U.S. App. LEXIS 27720 (6th Cir. Mar. 26, 2008), lessors' stub rent claim is a prepetition debt that is not within the scope of § 365(d)(3), and is not entitled to administrative expense priority under § 503(b)(1). The following are findings of fact and conclusions of law. FED. R. BANKR. P. 7052.

---

[1] "Stub rent" is shorthand for "the amount due a landlord for the period of occupancy and use between the petition date and the first post-petition rent payment." *In re Goody's Family Clothing Inc.*, 610 F.3d 812, 815 (3d Cir.), *cert. denied*, ___ U.S. ___, 131 S. Ct. 662, 178 L. Ed. 2d (2010).

## FACTS

Oreck Corporation leased its headquarters in Nashville, Tennessee, from SVF Highland Ridge LLC and HR Nash, LLC ("Lessors"). As most recently amended, the headquarters lease ran from April 1, 2013, to May, 31, 2015, with base rent of $37,500 per month plus $1,566.50 for parking and storage. All rent was "due and payable" in advance on the first of each month.

Oreck[2] filed Chapter 11 on May 6, 2013. At the petition date, Oreck had not paid headquarters rent for May, 2013. Unpaid rent for May totaled $39,066.50. Oreck continued to occupy and use some or all[3] of its headquarters postpetition, and paid in full all rents that became due after May 1, 2013.

On October 17, 2013, Lessors moved for Allowance of Administrative Expense Claim for Stub Rent Related to Oreck Corporation Headquarters. Lessors assert that prorated stub rent of $31,505.25 for the 25 postpetition days in May is an administrative expense under 11 U.S.C. § 365(d)(3)[4] and/or § 503(b)(1)(A).

---

[2] Eight Oreck-related entities also filed.

[3] "Some or all" is enough precision for reasons explained below.

[4] Whether failed performance under § 365(d)(3) necessarily produces an "administrative expense" is not decided because, explained below, Lessors' stub rent claim does not fall within § 365(d)(3). *See, e.g., In re Mr. Gatti's, Inc.*, 164 B.R. 929, 942–43 (Bankr. W.D. Tex. 1994) (Judge Kelly details competing interpretations of § 365(d)(3)).

## DISCUSSION

### A. 11 U.S.C. § 365(d)(3)

Section 365(d)(3) provides:

> The trustee shall timely perform all the obligations of the debtor, . . . , arising from and after the order for relief under any unexpired lease of nonresidential real property, until such lease is assumed or rejected, notwithstanding section 503(b)(1) of this title. . . . Acceptance of any such performance dos not constitute waiver or relinquishment of the lessor's rights under such lease or under this title.

11 U.S.C. § 365(d)(3).

Section 365(d)(3) was added to the Bankruptcy Code in 1984 as part of the "Shopping Center Amendments" to "'"prevent parties in contractual or lease relationships with the debtor from being left in doubt concerning their status vis-a-vis the estate."'" *In re Koenig Sporting Goods, Inc.*, 203 F.3d at 989 (quoting *Tully Constr. Co. v. Cannonsburg Envt'l Assocs., (In re Cannonsburg Envt'l Assocs.)*, 72 F.3d 1260, 1266 (6th Cir.1996) (quoting H.R. Rep. No. 95–595, at 348 (1978), reprinted in 1978 U.S.C.C.A.N. 5963, 6304))). Section 365(d)(3) was intended "'to relieve the burden placed on nonresidential real property lessors (or 'landlords') during the period between a tenant's bankruptcy petition and assumption or rejection of a lease.'" *In re Koenig Sporting Goods, Inc.*, 203 F.3d at 989 (quoting *Omni Partners, L.P. v. Pudgie's Dev. of NY, Inc. (In re Pudgie's Dev. of NY, Inc.)*, 239 B.R. 688, 692 (S.D.N.Y. 1999) (citing 130 Cong. Rec. S8894–95 (daily ed. June 29, 1994) (statement of Sen. Hatch))).[5]

---

[5] *See In re Mr. Gatti's, Inc.*, 164 B.R. 929, 931-35 (Bankr. W.D. Tex. 1994), for a detailed history of the treatment of lessors in bankruptcy that gave rise to the 1984 legislation that added § 365(d)(3).

Lessors urge adoption of a line of cases that applies § 365(d)(3) to stub rent under an accrual or proration theory to make stub rent payable in the same "timely" fashion as regular monthly rent that becomes due by contract post petition. *See, e.g.*, *In re Leather Factory Inc.*, 475 B.R. 710 (Bankr. C.D. Cal. 2012); *In re Circuit City Stores Inc.*, 447 B.R. 475 (Bankr. E.D. Va. 2009); *Heathcon Holdings, LLC v. Dunn Indus., LLC (In re Dunn Indus., LLC)*, 320 B.R. 86 (Bankr. D. Md. 2005).

Oreck responds that the United States Court of Appeals for the Sixth Circuit has pointed differently in *Koenig Sporting Goods*. Oreck reads *Koenig Sporting Goods* to adopt a "billing date" approach in § 365(d)(3) cases. Under the billing date approach, Oreck's stub rent obligation arose on May 1, 2013—before the petition and outside the reach of § 365(d)(3).

Lessors would distinguish *Koenig Sporting Goods* because "stub rent claims arising at the end of the § 365(d)(3) period"—approximately the facts in *Koenig Sporting Goods*—are different from this stub rent claim that arose at the beginning of the § 365(d)(3) period. According to Lessors, *Koenig Sporting Goods* should be "cabined to only stub rent claims arising in the pre-rejection period," citing *In re Phar-Mor, Inc.*, 290 B.R. 319 (Bankr. N.D. Ohio 2003); and *In re Travel 2000, Inc.*, 264 B.R. 444 (Bankr. W.D. Mich. 2001).[6]

---

[6] At oral argument, for the first time, Lessors also argued that comparison of the language in § 365(d)(3) and the later-enacted § 365(d)(5) (formerly § 365(d)(1) as enacted in 1994) supports its position that § 365(d)(3) applies to stub rent that arises during the month of filing, even if that rent first became due and payable prior to the petition. The parties were given an opportunity to brief the issue. Section 365(d)(3) provides, "trustee shall timely perform all the obligations of the debtor . . . arising from and after the order for relief under any unexpired lease of nonresidential real property." Section 365(d)(5) reads "trustee shall timely perform all of the obligations of the debtor . . . first arising from or after 60 days after the order for relief in a case under chapter 11 of this title under an unexpired lease of personal property". There are several dissimilarities between these two provisions, but Lessors focus on the word "first" in § 365(d)(5). In their supplemental brief, Lessors quote Senator Grassley commenting on then new § 365(d)(5): The bill "makes needed

Case 3:13-bk-04006    Doc 1241    Filed 03/10/14    Entered 03/10/14 15:21:14    Desc
Main Document     Page 4 of 16

In *Koenig Sporting Goods*, the Sixth Circuit considered a landlord's claim under § 365(d)(3) for a full month's rent that became contractually due on the first of the month when debtor rejected the lease on the second of the month. Affirming the bankruptcy court[7] and the Bankruptcy Appellate Panel for the Sixth Circuit,[8] the Court of Appeals concluded:

> Under the terms of the lease the debtor was obligated to pay Morse $8,500 in advance on the first of each month for that month's rent. The specific obligation to pay rent for December 1997 arose on December 1, which was during the postpetition, prerejection period. Under these circumstances, § 365(d)(3) is unambiguous as to the debtor's rent obligation and requires payment of the full month's rent.

*In re Koenig Sporting Goods, Inc.*, 203 F.3d at 989. The court specifically rejected debtor's argument that "equity, and 'common sense' compel[led] adoption of the proration method in th[at] context." *Id*.

Lessors would limit the holding in *Koenig Sporting Goods* to the end of the § 365(d)(3) period when the debtor controls the timing of rejection. At the beginning of a case, Lessors assert that § 365(d)(3) is ambiguous with respect to when an obligation "arises" under an unexpired lease

---

changes in the treatment of leases of personal property. Sixty days after the order for relief, the debtor will have to perform all obligations under the equipment lease, unless the court holds a hearing and determines otherwise, with the burden on the debtor. *The word 'first' as used in the section refers to the payments and the performance of all other obligations that initially become due more than 60 days after the order for relief. The purpose of that reference is to make clear the intent that the provision does not affect payments originally due prior to 60 days before [sic] the order of relief.*" 140 Cong. Rec. S14461, 14462 (Oct. 6, 1994) (Grassley was co-sponsor of S. 540) (emphasis added). As explained by Senator Grassley, "first arising from or after" was included in subsection (d)(5) to emphasize that no change was intended with respect to obligations initially arising during the first 59 days of a bankruptcy case. The subsequent enactment of § 365(d)(5) tells us nothing about proration under § 365(d)(3).

[7] *In re Koenig Sporting Goods, Inc.*, 221 B.R. 737 (Bankr. N.D. Ohio 1998).

[8] *Koenig Sporting Goods, Inc., v. Morse Rd. Co. (In re Koenig Sporting Goods, Inc.)*, 229 B.R. 388 (B.A.P. 6th Cir. 1999).

-5-

and—to protect landlords—stub rent should be prorated and the postpetition portion included in the "timely" performance required by § 365(d)(3). Lessors have some support in case law, even within the Sixth Circuit. *See, e.g.*, *In re Travel 2000, Inc.*, 264 B.R. 444, 450 (Bankr. W.D. Mich. 2001) ("[A]mbiguity emanates from the words 'arises' and 'obligation.' An 'obligation' can 'arise' when it comes due and payable or when it accrues. . . . [E]ven though the landlords' claims arose prepetition, the obligations of both the landlords and the Debtor arose post-petition. . . . [R]ent due falls under the purview of § 365(d)(3) . . . on a prorata basis."); *In re Leather Factory, Inc.*, 475 B.R. 710, 714 (Bankr. C.D. Cal. 2012) ("[R]ent for the days after the filing of the petition until the next lease payment is due are an administrative claim under § 365(d)(3) in a prorated amount of a full monthly lease payment . . . . To rule otherwise would reward the estate to the detriment of the landlord, which was not the intent of Congress.").

*Koenig Sporting Goods* precludes Lessors' argument that § 365(d)(3) is ambiguous when rent is contractually due in advance on the first of each month. Bankruptcy Judge Walter Shapero recognized this in *In re The ½ Off Card Shop, Inc.*, No. 00-48425-WS, 2001 WL 1822419, *1 (Bankr. E.D. Mich. 2001):

> Although some courts have found the concept of when "obligations" "arise" to be unclear, the U.S. Court of Appeals for the Sixth Circuit has found the language of § 365(d)(3) unambiguous in an analogous situation. . . .
>
> The logic and applicability of the *Koenig Sporting Goods* decision cannot be distinguished or avoided on the grounds that it involved rent at the end of the post-filing, rejection period, rather than at the beginning, or on any other ground urged by the landlords. The essence of the inquiry is the meaning to be attributed to the phrase "arising from and after the order for relief." Reasonable minds can differ and indeed have differed on that subject. However, . . . the Sixth Circuit's conclusion in *Koenig*, [is binding.]

Case 3:13-bk-04006 Doc 1241 Filed 03/10/14 Entered 03/10/14 15:21:14 Desc Main Document Page 6 of 16

As in *Koenig Sporting Goods*, Debtor's leases provided for payment of rent in advance, due on the first of each month. The due and payable date and the specific obligation to pay rent for the month of June, 2000 arose on June 1st. On June 2nd, the obligation continued to exist, Debtor having defaulted on June 1st by failing to pay. The landlords have a claim against the estate for that unpaid obligation, just not as a post-petition administrative expense. . . . [T]he rent obligation "arises" like anything else "arises"—when it first originates, comes into being, or becomes operative. That most fairly and accurately describes rent for an entire month that becomes due and payable in advance on the first of the month. Furthermore, a filing toward the end of the month (in a not unusual situation, where the debtor does not have real or exclusive practical control of the filing date) would favor the landlord, under the theory adopted and followed by this Court. So it can cut both ways.

The landlords' interpretation would change § 365(d)(3) to require timely performance of all obligations existing as of, as well as obligations arising from or after, the order for relief. That language is simply not in the Code . . . . The Court recognizes that Congress intended to provide special protection for lessors of non-residential real estate through administrative claim status for post-petition default damages. That general intent, however, cannot be used as a wedge to broaden language the Court finds to be otherwise unambiguous. If the landlords had been in same position, as the landlord in *Koenig Sporting Goods*, they might have urged the Court to find § 365(d)(3) to be clear and unambiguous. Under those facts, where the debtor had vacated shortly after the beginning of a month, they likely would have gladly accepted the full month's rent that such a reading would require. *Lessors of non-residential real estate cannot waive the flag of statutory ambiguity only when it suits them.*

*In re The ½ Off Card Shop, Inc.*, 2001 WL 1822419, at *2-*3 (emphasis added).

The Third Circuit embraced the Sixth Circuit's interpretation of § 365(d)(3) in *Centerpoint Properties v. Montgomery Ward Holding Corp. (In re Montgomery Ward Holding Corp.)*, 268 F.3d 205, 209 (3d Cir. 2001):

The clear and express intent of § 365(d)(3) is to require the trustee to perform the lease in accordance with its terms. To be consistent with this intent, any interpretation must look to the terms of the lease to determine both the nature of the 'obligation' and when it 'arises.' If one accepts this premise, it is difficult to find a textual basis for a proration approach. On the other hand, an approach which calls for the trustee to perform obligations as they become due under the terms of the lease fits comfortably with the statutory text.

-7-

The *Montgomery Ward* panel concluded "[i]n the context of a lease contract, . . . the most straightforward understanding of an obligation is something that one is legally required to perform under the terms of the lease and that such an obligation arises when one becomes legally obligated to perform." *In re Montgomery Ward Holding Corp.*, 268 F.3d at 209.

The Bankruptcy Appellate Panel of the Eighth Circuit adopted a bright-line, billing date approach to § 365(d)(3) in a more difficult context in *Burival v. Creditor Committee (In re Burival)*, 406 B.R. 548 (B.A.P. 8th Cir. 2009), *aff'd,* 613 F.3d 810 (8th Cir. 2010). The debtors in *Burival* were obligated to make two lease payments per year for crop land. A payment was contractually due two days after the Chapter 11 petition. The lease was ultimately rejected and the landlord sought payment under § 365(d)(3) of the entire amount due by contract. The bankruptcy court prorated day-by-day, awarding the landlord an administrative expense for part of the contract amount. The BAP reversed.

The BAP acknowledged that the billing date approach might be "more extreme in a crop land lease situation where rent is payable once or twice a year versus the standard commercial lease under which rent is generally paid monthly." Nonetheless, the BAP concluded it was "constrained to follow the language of Section 365(d)(3) which applies to all unexpired leases of nonresidential real property including crop leases." *In re Burival*, 406 B.R. at 554. In response to the debtors' argument that the billing date approach provided the landlord a windfall at the expense of other creditors, the BAP said this about § 365(d)(3):

> The accrual courts worry that the billing date approach may give a landlord priority over other creditors with respect to obligations which accrue pre-petition but are not payable until post-petition. We acknowledge that the billing approach may have this effect in certain situations. That is exactly what Congress did when it enacted Section 365(d)(3)—it provided special treatment for non-residential

landlords. Our interpretation of the statute is consistent with Congress' intent. The accrual courts similarly worry that a billing date approach provides the debtor with an opportunity to manipulate the system by timing its bankruptcy filing. A voluntary bankruptcy petition by its very nature creates a bankruptcy estate as of the commencement of the case. 11 U.S.C. § 541(a). The Debtor becomes a fiduciary for creditors and loses the ability to pay pre-petition debts without authority from the Bankruptcy Code or the court. Debtors contemplating a bankruptcy filing must take into consideration numerous factors in timing their petitions. Lease obligations are merely one more factor to consider in determining when to file a bankruptcy petition.

*In re Burival*, 406 B.R. at 553-54.

On further appeal, the United States Court of Appeals for the Eighth Circuit agreed that § 365(d)(3) is not ambiguous when applied to the lease payment that became due two days after the petition—the entire payment had postpetition character based on contract due date, without regard to use by or benefit to the estate. *Burival v. Roehrich (In re Burival)*, 613 F.3d 810, 812-13 (8th Cir. 2010).

*Koenig Sporting Goods* compels the conclusion that § 365(d)(3) is not ambiguous in the context of a monthly lease payable in advance on the first of each month. The statute requires timely performance of lease obligations that arise from[9] and after the petition date, as determined by the terms of the lease. The Oreck headquarters lease requires payment on the first of each month, in advance. In this Chapter 11 case filed on May 6, 2013, Lessors' claim for stub rent—from May 6, 2013 to May 31, 2013—arose on May 1, before the petition, and is not within the scope of § 365(d)(3).[10]

---

[9] Some courts have questioned what "from and" adds to the statute. *See, e.g.*, *In re Handy Andy Home Improvement Ctrs., Inc.*, 144 F.3d 1125 (7th Cir. 1998). Perhaps "from" makes clear that § 365(d)(3) applies when a debtor files on the day payment under the lease is due—a question not here presented.

[10] As the Third Circuit observed in *Montgomery Ward*, the result may in some cases leave room for "strategic behavior on the part of landlords and tenants. . . . [However, such] strategic

Case 3:13-bk-04006   Doc 1241   Filed 03/10/14   Entered 03/10/14 15:21:14   Desc
Main Document     Page 9 of 16

## B. 11 U.S.C. § 503(b)

Alternatively, or perhaps, additionally, Lessors assert entitlement to an administrative expense under § 503(b)(1) for postpetition occupancy and use of the Oreck headquarters during the stub rent period—either in the contract amount or in an amount measured by benefit to the estate. Lessors argue that § 365(d)(3) did not supercede § 503(b)(1) and landlords can "seek 'an administrative claim under § 503 for rent relating to any period in which rental property was occupied by the debtor, regardless of when the rent was payable. Nothing in § 365(d)(3) requires any change in this practice.'" (Lessors' Reply to Debtors' Objection, at 3 (quoting *In re UAL Corp.*, 2 B.R. 121, 127 (Bankr. N.D. Ill. 2003)).

There is disagreement whether and how § 503(b)(1) applies to occupancy and/or use of leased property after a Chapter 11 petition when § 365(d)(3) does or does not also apply. *See, e.g., In re Burival*, 613 F.3d at 812 (Section "365(d)(3) claims have priority status. Section 365(d)(3) expressly preempts subsection 503(b)(1), but not the introductory authorization of 'administrative expenses' in § 503(b). The administrative expenses listed in the subsections of § 503(b)—preceded by 'including'—are not exclusive. . . . § 365(d)(3) claims have a status at least equal to a claim under subsection 503(b)(1)[.]") (citation omitted); *In re Goody's Family Clothing Inc.*, 610 F.3d 812 (3d Cir.), *cert. denied*, __ U.S. __, 131 S. Ct. 662, 178 L. Ed. 2d 483 (2010) (Section 365(d)(3) does not preempt § 503(b)(1); lessor's stub rent claim that falls outside the scope of § 365(d)(3) can be allowed as an administrative expense under § 503(b)(1) when lessor demonstrated debtor's occupancy of property conferred actual and necessary benefit to debtor.); *In re Imperial Beverage*

---

behavior . . . can be constrained by forethought and careful drafting." In *re Montgomery Ward Holding Co.*, 268 F.3d at 212.

*Group, LLC*, 457 B.R. 490 (Bankr. N.D. Tex. 2011) (Adopting billing date approach to § 365(d)(3), but allowing administrative expense under § 503(b)(1) to the extend landlord can prove actual and necessary expense of preserving debtor's estate during stub rent period.). Facts matter in this debate—the timing of the bankruptcy petition; the terms of the lease; the extent of occupancy or use; the timing of rejection. Judge Houser elegantly teased at least four different outcomes from the interaction of §§ 365(d)(3) and 503(b)(1) in *In re Imperial Beverage Group, LLC*, 457 B.R. 490 (Bankr. N.D. Tex. 2011).

Section 503(b) was not before the Sixth Circuit in *Koenig Sporting Goods*,[11] and the court did not address whether § 503(b) operates along side § 365(d)(3). There is temptation to wade into this debate with the observation that the administrative expense theory urged by Lessors threatens to reinstate the rent proration approach the Sixth Circuit rejected in *Koenig Sporting Goods*.

But there is a fundamental reason not to get wet in this case. Albeit in an unpublished decision,[12] the Sixth Circuit has already signaled that a lessor positioned like the Lessors here cannot satisfy the conditions for allowance of an administrative expense—even if § 503(b)(1) is available when § 365(d)(3) is not.

---

[11] The bankruptcy court in *Koenig Sporting Goods* noted that "rent payable . . . for the 29 days in December following rejection of the lease would not qualify as administrative expenses since rent for that period provided no benefit to the Debtor's estate." *In re Koenig Sporting Goods, Inc.*, 221 B.R. at 740. This issue was not pursued on appeal.

[12] *Crump v. Lafler*, 657 F.3d 393, 405 (6th Cir. 2011) ("Unpublished decisions in the Sixth Circuit are, of course, not binding precedent on subsequent panels, . . ., but their reasoning may be 'instructive' or helpful." (citing *Combs v. International Ins. Co.*, 354 F.3d 568, 593 (6th Cir. 2004)); *Gibson v. Gibson (In re Gibson)*, 219 B.R. 195, 201 n.2 (B.A.P. 6th Cir. 1998) ("Although not binding [precedent], unpublished decisions of the Sixth Circuit may be cited if persuasive and no published decision will serve as well.").

Case 3:13-bk-04006 Doc 1241 Filed 03/10/14 Entered 03/10/14 15:21:14 Desc Main Document Page 11 of 16

In *BK Novi Project, L.L.C. v. Stevenson (In re Baby N' Kids Bedrooms, Inc.)*, No. 06-15314, 2007 WL 1218768 (E.D. Mich. April 24, 2007), *reconsideration denied*, 2007 WL 1434797 (E.D. Mich. May 14, 2007), *aff'd,* No. 07-1606, 2008 U.S. App. LEXIS 27720 (6th Cir. Mar. 26, 2008), the Sixth Circuit denied a landlord's request for an administrative expense for stub rent under facts that mirror this case. The debtor in *Baby N'Kids* filed a Chapter 7 petition on June 8, 2006. The June rent for the debtor's business property was due by contract on June 1 and had not been paid. The lease was rejected effective July 31, 2006. The landlord sought an administrative expense under § 503(b) for the period between June 8 and July 31.

The bankruptcy court held that rent owing for the month of June could not be an administrative expense because it was a prepetition debt that became contractually due in full on June 1. This, of course, reflected the Sixth Circuit's analysis in *Koenig Sporting Goods*.

On appeal to the district court, the landlord in *Baby N'Kids* argued that *Koenig Sporting Goods* was the wrong compass because the case dealt with § 365(d)(3), not § 503(b). The district court disagreed:

> Although Landlord is correct in arguing that *Koenig* dealt with § 365(d)(3), as opposed to § 503(b), this Court believes that the reasoning applied in *Koenig* governs the outcome in this particular case. Like the lease in *Koenig*, the lease entered into between Landlord and Debtor provided that the rent was due "[o]n the first day of each month" for that month's rent. Consequently, in this case, Debtor's obligation to pay rent for June 2006 arose on June 1, 2006. *Koenig*, 203 F.3d at 989. Therefore, because the obligation to pay rent for June 2006 arose pre-petition, Landlord's claim is not entitled to priority as an administrative expense under § 503(b)(1).

*In re Baby N' Kids Bedrooms, Inc.*, 2007 WL 1218768, at *4 (citing *PBGC v. Sunarhauserman, Inc. (In re Sunarhauserman, Inc.)*, 126 F.3d 811, 817 (6th Cir. 1997)).

On further appeal, the Sixth Circuit affirmed:

> [T]he bankruptcy court correctly determined that the rent owing for the entire month of June 2006 constituted a pre-petition obligation that is not entitled to administrative expense treatment. . . . Only post-petition debts, however, can be treated as administrative expenses; pre-petition debts may not be granted administrative-expense priority. . . . Courts agree that an administrative expense has two defining characteristics: (1) the expense and right to payment arise after the filing of bankruptcy, and (2) the consideration supporting the right to payment provides some benefit to the estate.
>
> In order to determine when a transaction occurred pre-petition or post-petition, the focus is on, ". . . when the acts giving rise to a liability took place, not when they accrued." The lease entered into between BK Novi and the debtor provided that the rent was due "[o]n the first day of each month" for that month's rent. Consequently, in this case, the debtor's obligation to pay rent for June 2006 arose on June 1, 2006. Therefore, because the obligation to pay rent for June 2006 arose pre-petition, BK Novi's claim for rent owing for the entire month of June 2006 is not entitled to priority as an administrative expense under § 503(b)(1).

*In re Baby N' Kids Bedrooms, Inc.*, 2008 U.S. App. LEXIS 27720, at *5-*7 (internal citations omitted).

*Baby N'Kids* is strongly persuasive that the Sixth Circuit would not award administrative expense status here to the Lessors' claim for May, 2013 headquarters rent—even if the Circuit were first inclined to allow § 503(b)(1) to function when § 365(d)(3) did not. Lessors' parry—that what they assert as an administrative expense is separate and different from their lease claim—is an unsustainable illusion after *Baby N' Kids*, at least with respect to this kinds of lease.[13]

---

[13] *See also In re Johnson Rubber Co.*, 39 1B.R. 779, 782 (Bankr. N.D. Ohio 2009) ("It is clear in the Sixth Circuit that to be entitled to an administrative expense claim, the creditor must have been induced by the debtor-in-possession, not the prepetition debtor. . . . '[I]f the inducement came from a pre-petition debtor, then consideration was given to that entity, rather than to the debtor-in-possession.' . . . [T]here was no postpetition transaction or inducement from the debtor-in-possession that would satisfy the two-prong test in this Circuit with respect to the stub rent. . . . [I]n *United Trucking*, . . . , the Court determined that there was no inducement by the debtor in possession because 'United merely continued to possess the trailers pursuant to the prepetition contract with [debtor].' . . . '[N]ormally, merely continuing to possess equipment pursuant to a

-13-

The outcome here is not offensive. One of the goals of § 365(d)(3) was to relieve landlords of some of the uncertainties of collecting rent during the prerejection period in a bankruptcy case. *See, e.g., In re Koenig Sporting Goods, Inc.*, 203 F.3d at 989. Prior to 1984, lessors commonly faced disallowance, reduction, or delayed payment of postpetition rents—depending upon debtor's use of the property, market value of the leased premises, solvency of the debtor and the simple fact that administrative expenses had no immediate payment requirement.

With § 365(d)(3), Congress drew at least the shadow of a bright line for landlords. The unambiguous reading of § 365(d)(3) adopted by *Koenig Sporting Goods* and applied in the § 503(b)(1) context in *Baby N' Kids* produces certainty with respect to the status of rent for the month in which a bankruptcy petition is filed when the contract requires payment in full on the first of the month. Oreck's debt for May, 2013 headquarters rent is a prepetition claim.

## CONCLUSION

Under *Koenig Sporting Goods, Inc. v. Morse Road Company (In re Koenig Sporting Goods, Inc.)*, 203 F.3d 986 (6th Cir. 2000), and *BK Novi Project L.L.C. v. Stevenson (In re Baby N' Kids Bedrooms, Inc.)*, No. 07-1606, 2008 U.S. App. LEXIS 27720 (6th Cir. Mar. 26, 2008), Lessors' stub

---

prepetition contract does not constitute 'inducement' by the debtor in possession.' . . . [I]t appears undisputed from this record that Johnson Rubber merely continued to use equipment that was supplied to it pursuant to prepetition contracts with the Movants. This does not satisfy the first requirement for administrative expense status in this Circuit. While the Movants cite several cases in support of their argument that stub rent is entitled to administrative expense status, none of these cases are controlling Sixth Circuit authority that apply the two-part test as outlined in *Sunarhauserman* . . . . Having failed to meet the first prong of the test, the Movants are not entitled to administrative expense claims as requested.").

-14-

Case 3:13-bk-04006    Doc 1241    Filed 03/10/14    Entered 03/10/14 15:21:14    Desc
Main Document    Page 14 of 16

rent claim is not within the scope of § 365(d)(3), and is not entitled to administrative expense priority under § 503(b)(1).

Case 3:13-bk-04006    Doc 1241    Filed 03/10/14    Entered 03/10/14 15:21:14    Desc
Main Document    Page 15 of 16

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE

In re:

ORECK CORPORATION, et. al,

*Debtors.*

Case No. 3:13-bk-04006
(Administratively Consolidated)

Chapter 11

Hon. Keith M. Lundin

## APPEARANCES

Alexandra E. Dugan
William L. Norton, III
BRADLEY ARANT BOULT CUMMINGS, LLP
1600 Division Street, Suite 700
PO Box 340025
Nashville, TN 37203
615-252-4638
Email: Adugan@babc.com
615 252-2397
Email: **Bnorton@babc.com**
Attorney for Oreck Corporation

Michael E. Collins
MANIER & HEROD
150 Fourth Avenue North, Suite 2200
Nashville, Tennessee 37219
(615) 244-0030
MCollins@manierherod.com
Counsel for USAA Real Estate Company
As Agent for HR NASH, LLC, SVF HIGHLAND RIDGE, LLC

**THE HONORABLE KEITH M. LUNDIN
CHIEF JUDGE, U.S. BANKRUPTCY COURT**

This Order has been electronically
signed. The Judge's signature and
Court's seal appear at the top of the
first page.
United States Bankruptcy Court.